STACY CARABALLO, for herself       )
and on behalf of all others        )
similarly situated                 )
                                   )
        Plaintiff,                 )
                                   )
                                   )
                                   )
        v.                         )
                                   )
                                   )
                                   )                    **ORDER**
SHOREH BAGBEH; SCOTT               )
WELLINGTON RUDOLPH, ESQ.;          )
BLUE VIEW CORPORATION d/b/a        )
SB Classics, Inc.; LOAN            )
SERVICING GROUP, LLC; K.H.F.       )
LENDING, LLC; INSTANT              )
FUNDING, LLC; STEPHEN M.           )
RUSSELL, SR., ESQ.; and BELL,      )
DAVIS & PITT, P.A.;                )
                                   )
        Defendants.                )


        This matter is before the court on a motion for sanctions

filed by prior defendants Stephen M. Russell ("Mr. Russell") and

Bell, Davis & Pitt, P.A.'s ("Bell Davis") (collectively the

"attorney defendants").[1]    Plaintiff has responded, and the

_____

[1] Mr. Russell and Bell Davis filed the motion for sanctions on
February 7, 2011.  They were dismissed from this action by
order, filed March 31, 2011, granting their motion to dismiss.

attorney defendants have replied.  This matter is ripe for adjudication.

## STATEMENT OF THE CASE

Stacy Caraballo and Kelly Jacobs filed this action on behalf of themselves and others similarly situated seeking monetary damages under the Fair Debt Collections Practices Act (FDCPA); federal and state racketeering statutes (RICO); and North Carolina law.  Following the attorney defendants' motion to dismiss, Kelly Jacobs filed a Notice of Voluntary Dismissal of all his claims.  In this court's order of March 31, 2011, the court dismissed the attorney defendants from this matter. Remaining before the court are plaintiff Caraballo's claims against defendants Shoreh Bagbeh, Scott Wellington Rudolph, Esq., Blue View Corporation d/b/a SB Classics, Inc., Loan Servicing Group, LLC, K.H.F. Lending LLC, and Instant Funding, LLC.

### Allegations against the Attorney Defendants

Plaintiff alleged the following facts against the attorney defendants, as previously stated by this court in its order on defendants' motion to dismiss:

Mr. Russell is a partner with Bell Davis, a law firm with offices in Winston-Salem, North Carolina.  In 2008, defendant Blue View Corporation ("Blue View") retained Mr. Russell to defend it before this court in Massey v. Blue View Corp., No. 7:08-CV-39, an action filed by plaintiffs' counsel in the instant matter.

2

Based on Mr. Russell's representation of Blue View in the Massey action, plaintiff alleges that "Mr. Russell has actual knowledge that [the Blue View Defendants] make their entire living by means of illegal and harmful collection practices, regularly including mail and wire fraud." (Compl. ¶ 27.) The complaint further alleges, as relates to Mr. Russell's representation of the Blue View defendants in the Massey action:

> 30. Mr. Russell also knew that Blue View Defendants' recordkeeping is often careless and grossly erroneous, with the errors invariably favoring Blue View Defendants . . . .
>
> . . .
>
> 32. Mr. Russell must have billed at least 50 hours for his work in the Massey case's extensive discovery, complicated motion practice, and at least one overnight trip from North Carolina to San Diego .
>
> . . .
>
> 33. Since Mr. Russell has some 30 years experience, and [Bell Davis'] advertising boasts of its selection as "the top-ranked law firm in Winston-Salem in Legal Malpractice Law" on the sole basis of Mr. Russell's expertise, his hourly rate must be $300 or more.
>
> 34. Total fees for the Massey case must therefore have been in excess of $10,000, and remitted to [Bell Davis] account(s) at Mr. Russell's direction in two or more transactions . . . .

(Id. ¶¶ 30, 32, 33, 34.)

On or about April 3, 2000, plaintiff Stacy Caraballo incurred a debt of approximately $20,500 from Bank One for a home equity line of credit secured by her primary residence. According to the complaint, the loan agreement provided for the following fees: $25 return item charge; $25 late fee for payments not made within 10 days of the due date; annual fees; payment of closing costs; stop payment fee; overlimit charge; credit line check printing charge; schedule fee change if the credit line was terminated in two years; charge for writing checks over the limit; and return checks for such items. (Compl. ¶¶ 38-39.)

3

Defendant Blue View acquired Caraballo's debt from Bank One in February 2004. At the time it was acquired, the debt was already in default. After acquisition, Blue View attempted to collect on the debt by sending monthly statements to Caraballo and employing the services of defendants Loan Servicing Group and K.H.F. Lending. From February 2004 through April 2010, Blue View, Loan Servicing Group and/or K.H.F. Lending contacted Caraballo in an attempt to collect on the debt. Plaintiff alleges that these attempts to collect on the debt were confusing and deceptive (Compl. ¶¶ 45, 48), were false and violative of 15 U.S.C. §§ 1692e(2), (10) and 1692f(1) (id. ¶ 62), constituted mail fraud in violation of 18 U.S.C. § 1341 (id. ¶ 53), constituted wire fraud in violation of 18 U.S.C. § 1343 (id. ¶ 62), and were harassing and annoying in violation of 15 U.S.C. § 1692d(5) (id. ¶¶ 65-66).

In the early months of 2010, plaintiff stopped making timely payments on her debt. Mr. Russell was retained by Blue View to assist with contacting Caraballo's counsel regarding her outstanding debt. On May 10, 2010, Mr. Russell wrote to Caraballo's counsel inquiring as to why Caraballo had stopped making payments on her account. The complaint alleges that this letter constitutes dunning and violates the mail fraud statutes and other federal law. (Compl. ¶¶ 70-71.) On May 27, 2010, Mr. Russell's legal assistant, at the request of Caraballo's counsel, provided to Caraballo's counsel a statement showing Caraballo's payments and balance owed. The complaint alleges this email violated federal and state law and constitutes wire fraud. (Compl. ¶¶ 75-76.)

The complaint alleges that "it is not at all clear to Ms. Caraballo just how much she owes, or if in fact she has paid this debt off entirely." (Id. ¶ 78.) The complaint also states that Caraballo intends "to amend the complaint to add counts for RICO, fraud and other causes of action that require actual damages" if she can determine that she has paid more money on the debt than she owes. (Compl. ¶ 80.)

## COURT'S DISCUSSION

In the order dismissing the claims against the attorney defendants, this court found that plaintiff had failed to state a claim upon which relief may be granted, as to each of the claims alleged, including both the Fair Debt Collection Practice

4

Act claims, as well as the various state law claims including fraud, conversion, etc.

Rule 11 of the Federal Rules of Civil Procedure provides, in pertinent part:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –
>
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> >
> > (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Civ. P. 11(b).

5

This court finds that plaintiff's claims did not have evidentiary support and were not warranted by existing law or a reasonable extension thereof. As detailed in the order dismissing those claims pursuant to Federal Rule of Civil Procedure 12(b)(6), there is no evidentiary support for these allegations. Furthermore, the court finds these allegations were brought for an improper purpose. As detailed in defendants' motion for sanctions, plaintiff's counsel has made repeated filings before this court, the State Bar and the Wake County Superior Court reiterating the baseless allegations that the attorney defendants have engaged in racketeering, wire fraud, money laundering and receipt of illegally obtained funds. Further, those allegations were made by an attorney who claimed to be experienced in FDCPA litigation. Plaintiff's counsel chose to pursue litigation against the attorney defendants, and this court finds that plaintiff's counsel has violated Rule 11. See Brubaker v. City of Richmond, 943 F.2d 1363, 1373 (4th Cir. 1991).

> After it is determined that Rule 11 has been violated, the amount of sanction is determined. In calculating the sanction, a district court should bear in mind that the purposes of Rule 11 include "compensating the victims of the rule 11 violation, as well as punishing present litigation abuse, streamlining court dockets and facilitating court management." In re Kuntsler, 914 F.2d at 522. The amount of a monetary sanction, however, should always reflect the primary purpose of Rule 11--deterrence of future litigation abuse. Id. at 522-23. Accordingly, a district court should expressly

6

consider the four factors adopted by this circuit in
In re Kuntsler: "(1) the reasonableness of the
opposing party's attorney's fees; (2) the minimum to
deter; (3) the ability to pay; and (4) factors related
to the severity of the Rule 11 violation." Id. at 523
(citing White v. General Motors Corp., 908 F.2d 675
(10th Cir.1990)).

Brubaker, 943 F.2d at 1373-74.

Defendant's motion for sanctions [DE #16] is GRANTED.

## CONCLUSION

For the foregoing reasons, as well as for the reasons
stated in the attorney defendants' motion for sanctions and
memorandum in support thereof, their motion for sanctions
[DE #16] is GRANTED. Attorney defendants shall file, within 30
days, an affidavit for attorneys' fees and costs incurred in
defending this action, including the cost of this sanctions
motion. Plaintiff's counsel shall have 20 days from the date of
defendants' filing in which to respond. The court will then
determine an appropriate sanction against plaintiff's counsel.[2]

This _9th_ day of August 2011.

Malcolm J. Howard
Senior United States District Judge

At Greenville, NC
#26

---

[2] The court notes these sanctions are being granted against
plaintiff's counsel, not against plaintiff.

7